NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

August 28, 2024

LOUISE ARKEL
Federal Public Defender
972 Broad St.
Newark, NJ 07102
*Counsel for Defendant Rasheed Hargrove*

ALISON THOMPSON
DOJ-USAO
970 BROAD STREET
NEWARK, NJ 07102
973-645-2903
*Counsel for the United States of America*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

    **RE:**    *United States v. Rasheed Hargrove*
               **Criminal Action No.: 01-538 (SDW)**

Counsel:

    Before this Court is Defendant Rasheed Hargrove's ("Defendant") Motion for Compassionate Release ("Motion") under the First Step Act ("FSA"), 18 U.S.C. § 3582 (c)(1). (D.E. 271.) This Court having considered the parties' submissions, and for the reasons stated below, Defendant's Motion is **DENIED**.

**STATEMENT OF FACTS**

    Defendant was the leader of "The Third World Crips" ("the enterprise"), a criminal enterprise operating out of the Hyatt Court Housing Project in Newark, New Jersey. (D.E. 288 at 1790.) The enterprise engaged in narcotics trafficking and violence. (*Id.*) Defendant was affiliated with the enterprise from a young age, following his difficult upbringing. (D.E. 231 at 365.) His parents separated when he was 11 years old, his father passed away shortly after, and his mother struggled to provide for the family in his father's absence. (*Id.*) Accordingly, Defendant's family frequently went without food and, at one point in time, lost their apartment. (*Id.*) By age 14 he

1

had dropped out of the tenth grade and joined the enterprise. (*Id.*) He committed the underlying offense at age 22. (*Id.* at 364, 365.)

Defendant used violence to become the exclusive supplier of heroin, cocaine, and crack in the Hyatt Court Housing Project area. (D.E. 288 at 1792.) He supplied to over 500 routine customers and made use of minors, firearms, and pit bulls in his narcotics distribution scheme. (*Id.* at 1792, 1793–1794.) The subjects of Defendant's violence included not only rival drug dealers and rival gang members, but also residents. (D.E. 288 at 1792.) Under his tenure, the enterprise intimidated the residents of the housing project, limited their access to their apartments, and demanded they wear gang colors. (*Id.* at 1793.)

Defendant used violence to effectuate his operations. He and his co-conspirators severely assaulted a woman suspected of stealing drugs by holding her face to a radiator long enough to remove pigment. (D.E. 288 at 1793.) On another occasion, Defendant and his co-conspirators stripped, restrained, kicked, punched, and set a pit bull upon a pregnant woman suspected of stealing drugs. (*Id.*) Defendant engaged in discussions with his co-defendant, Erik Johnson, prior to Mr. Johnson pistol-whipping the mother of a woman suspected of stealing a gun and slamming her head against a telephone booth. (*Id.*) Defendant employed weapons in his operations. (*Id.* at 1794.) He provided two firearms to a co-conspirator and ordered him to shoot a suspected informant in a location where children were playing basketball. (*Id.*) On another occasion, Defendant ordered a co-conspirator to stab someone. (*Id.*) Defendant would often savagely brand new gang members' skin to identify them like cattle.

A jury convicted Defendant of conspiracy and narcotics trafficking under 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. (*Id.*) During sentencing, the Honorable Alfred M. Wolin, USDJ (ret.) remarked that Defendant had earned the punishment and showed no remorse. (*Id.* at 1795.) Defendant's time incarcerated has not been without incident. He accrued at least two disciplinary records for possession of a dangerous weapon, one of which included admission to possession of a sharpened brass rod. (D.E. 285 app. at 25, 39.) Defendant incurred multiple disciplinary infractions for assault, in one instance swinging a sock with batteries in it. (*Id.* at 22, 23, 26.) In another instance, Defendant joined in a three-on-one attack against another inmate, making use of chairs, resulting in serious injury. (*Id.* at 32.) Defendant was disciplined for threatening facility staff with bodily harm and orchestrating a drug introduction scheme. (*Id.* at 28–29.) He was also disciplined for incidents involving possession of intoxicants. (*Id.* at 36, 38.)

Nevertheless, Defendant completed substantial coursework during incarceration and earned his GED. Defendant's family sent letters to this Court in his support, seeking his release and pledging to support him in transitioning back to society. (*Id.* 1–7.)[1]

**PROCEDURAL HISTORY**

---

[1] Defendant's eldest sister, Lorrie Lynch, described him as a great dad, and expressed that he would spend his remaining days with his son, should he be released. (D.E. 285 Appx. at 1.) Lorrie also emphasized that Defendant has stayed in touch with his family throughout his incarceration. (*Id.*) Defendant's uncle wrote that Defendant is remorseful, looks forward to working, and has his full support. (*Id.*) Defendant's aunt emphasized that she is ready to assist Defendant and help him gain and maintain employment with the skills she has developed from her college education and her experience in the healthcare and education fields. (*Id.* at 4.)

On June 28, 2002, Defendant was convicted of conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine base and one kilogram or more of heroin. (D.E. 105.) Defendant was also convicted of distribution and possession with intent to distribute heroin. (*Id.*) On November 1, 2002, Defendant was sentenced to the maximum of 240 months for the substantive narcotics trafficking offenses. (*Id.*) For the conspiracy charge, the court accepted the United States Probation Office calculation of total offense level 46 and criminal history category of I, of the United States Sentencing guidelines (USSG), which mandated a life sentence. *(Id).* Defendant appealed both his conviction and his sentence, but the Third Circuit affirmed both in 2004. (D.E. 118, 153.)

On November 14, 2017, Defendant submitted a motion for a reduction of sentence under 18 U.S.C. § 3582(c)(2) pursuant to United States Sentencing Guidelines ("U.S.S.G.") Amendment 782. His motion was granted, by the Honorable Jose L. Linares, USDJ (ret.) and his sentence was reduced to 40 years imprisonment, which was not as low as he requested but matched the sentence reduction imposed on his co-defendants. (D.E. 227.) Defendant subsequently appealed the reduction of sentence, seeking further reduction, but the Third Circuit affirmed in 2019. (D.E. 246.)

On November 4, 2022, Defendant filed the instant motion seeking further reduction of his sentence under the First Step Act ("FSA"). (D.E. 271.)[2] On September 12, 2023 the Federal Public Defender's Office filed a brief in support of Defendant's motion, which was opposed by the Government. (D.E. 285.)

**APPLICABLE LAW**

Under the FSA, this Court grants compassionate release where there are "extraordinary and compelling reasons" to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Grant or denial of an FSA motion is discretionary. *See United States v. Brow*, 62 F.4th 114, 119 (3d Cir. 2023) ("[U]nder the language of the First Step Act, if a criminal defendant is eligible for resentencing, the court has the discretion—but is not required—to impose a reduced sentence."). "[A] defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2.

Before this Court considers a request for sentence reduction under 18 U.S.C. § 3582(c)(1), Defendant must first request the Bureau of Prisons ("BOP") to file a motion for a reduced sentence on his behalf. 18 U.S.C. § 3582(c)(1)(A). Then, Defendant must either "(i) wait thirty days for the BOP to respond or (ii) exhaust all available administrative appeals after receiving an adverse decision [from the BOP]." *United States v. McDonald*, Crim. No. 09-656, 2020 WL 3638280, at *3 (D.N.J. July 2, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

---

[2] The FSA applies the Fair Sentencing Act of 2010 retroactively. The Fair Sentencing Act of 2010 only modified sentences for certain crimes committed after August 3, 2010, see *Dorsey v. United States*, 567 U.S. 260 (2012). The FSA enables those who committed the same crimes, but prior to August 3, 2010, to seek sentence reduction. 18 U.S.C. § 404(a). The FSA precludes movants who previously sought sentence reduction under sections 2 and 3 of the Fair Sentencing Act of 2010, or those who previously sought relief under the FSA itself. 18 U.S.C. § 404(c).

3

Once Defendant has satisfied those requirements, this Court may reduce his sentence if it "finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under [18 U.S.C. § 3553(a)] warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (quoting *United States v. Pabon*, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020)). This Court considers § 3553(a) sentencing factors when evaluating FSA claims as well as favorable evidence of Defendant's conduct post sentencing. These factors include, in relevant part: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed; and disparities in sentences among defendants convicted of similar conduct. *See United States v. Easter*, 975 F.3d 318, 323 (3d Cir. 2020); *see also United States v. Shields*, 48 F.4th 183, 191 (quoting *Pepper v. United States*, 562 U.S. 476, 504 (2011)).

**DISCUSSION**[3]

There is no dispute that Defendant's convictions are "covered offenses" thus, under 18 U.S.C. § 404, this Court considers the § 3553(a) factors to determine Defendant's eligibility for sentence reduction. *United States v. Easter*, F.3d at 323. Apart from alleging prison conditions during the Covid-19 pandemic, Defendant has not offered any new facts or compelling reasons to support a sentence reduction that were not already considered by Judge Linares during Defendant's first sentence reduction proceeding. This Court find no reason to deviate from Judge Linares's prior ruling.

As to the history and characteristics of Defendant, his difficult upbringing as an impoverished youth, as well as his coursework in prison and close ties with his family weigh in favor of a sentence reduction. However, the nature and circumstances of the underlying conduct and Defendant's use of violence to effectuate his crimes causes great concern for public safety and the need to promote respect for the law. Defendant's violence plagued the communities in which he trafficked narcotics by terrorizing residents, assaulting women, and putting children at risk daily. Further, Defendant's prison disciplinary record reflects an ongoing pattern of violence and participation in narcotics trafficking—behavior that obviously weighs against a sentence reduction.

As to the necessity for the sentence imposed, on this record it appears that Defendant has not been deterred from engaging in criminal activity. The violent nature of the underlying offense coupled with Defendant's involvement with violence and drug trafficking in prison demonstrates a continued need to protect the public and to promote respect for the law. (D.E. 285 Appx at 22–23, 26, 29.) Moreover, a further reduction of Defendant's sentence would create an unwarranted sentencing disparity, given that as a leader, Defendant seeks a sentence below that of his co-defendants, most of whom were subordinate to him.

Finally, Defendant raises the harsh environment of prison as well as the impact of the Covid-19 pandemic as grounds for a sentence reduction. (D.E. 285 at 1622.) However, Defendant

---

[3] As a preliminary matter, while there is no indication in any of the relevant briefs or exhibits that Defendant exhausted his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A), the Government nevertheless concludes that Defendant is eligible to seek reduction. As there are no procedural challenges to the instant motion and nothing to suggest otherwise, the administrative remedies are deemed exhausted, and the motion will be decided on the merits.

4

does not argue how these conditions impacted him specifically such that a sentence reduction is warranted. This Court does not minimize the risks that COVID-19 poses in the federal prison system, however "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The BOP has a shared desire "for a safe and healthy prison environment." *Id.* [4] As such, "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.* As it stands, Defendant has failed to raise new and compelling reasons to support any further sentence reduction.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion is **DENIED**. An appropriate order follows.

    /s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

---

[4] Citing Federal Bureau of Prisons, COVID-19 Action Plan, (Mar. 13, 2020, 3:09 PM), Federal Bureau of Prisons COVID-19 Action Plan (bop.gov) (last visited August 26, 2024).